UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
CRYSTAL CRUZ,                         :
                                      :
                         Plaintiff,   :        21cv1999 (DLC)
                                      :
              -v-                     :        OPINION AND ORDER
                                      :
CITY OF NEW YORK, NEW YORK HEALTH AND :
HOSPITALS CORPORATION, NICOLE         :
PHILLIPS, in her official and         :
individual capacities, DANA STEIN, in :
her official and individual           :
capacities, and BLANCHE GREENFIELD, in :
her official and individual           :
capacities,                           :
                                      :
                         Defendants.  :
                                      :
------------------------------------- X

APPEARANCES:

For plaintiff Crystal Cruz:
Anne C. Leahey
Anne Leahey Law, LLC
17 Dumplin Hill Lane
Huntington, NY 11743

For defendants:
Jack Benjamin Greenhouse
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

     Crystal Cruz, an employee of the New York City Health and

Hospital Corporation ("HHC"), has sued HHC, the City of New

York, and several individual HHC employees.  She alleges that

they violated federal, state, and city law by discriminating

against her on the basis of her disability and age and by retaliating against her.  The defendants have moved to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that many of Cruz's claims are time-barred and that her complaint in any event fails to state a claim.  For the following reasons, the motion to dismiss is granted in part.  Her disability discrimination claims survive.

## Background

The following facts are derived from Cruz's complaint and are presumed to be true.  Cruz, a longtime clerical employee at HHC, has suffered physical injuries and been on medical leave for significant periods of time during her employment with HHC. Cruz principally complains in this lawsuit that the defendants failed to offer her employment that accommodated her disabilities after her doctors cleared her to return to work at HHC in December 2018.

I.   Cruz's History at HHC:  1991 to 2015

HHC hired Cruz in 1991.  During her decades of employment prior to the events giving rise to this litigation, she worked in clerical positions at the Jacobi Medical Center ("Jacobi"), an HHC facility in the Bronx.  In 2001, after she underwent spinal surgery, her doctor recommended that she use an ergonomic

office chair upon returning to work, and HHC authorized this accommodation.

In July 2011, Cruz was involved in a car accident and incurred neck and spine injuries.  She was placed on medical leave and did not return to work until January 2013.  On December 17, 2013, Cruz was injured in a fall outside of Jacobi. She again went on medical leave.  She returned to work at Jacobi in January 2015, but her use of both hands was limited, she had difficulty lifting objects above her head, and she suffered pain in her hands and arms if they were overused.  Due to these impairments, she was given several accommodations upon her return to work in 2015, including additional opportunities to take breaks to prevent pain stemming from overuse of her hands.

II.  The 2015 Sexual Harassment Incident and Subsequent Medical Leave

Cruz alleges that, on September 9, 2015, she was sexually harassed by a colleague (the "Colleague").  Specifically, she claims that the Colleague looked under her skirt, commented on the appearance of her clothing and underwear, and whistled at her.  After reporting the harassment, Cruz went to the employee health department.

Shortly after Cruz reported the Colleague's harassment, Cruz was transferred from a systems analyst position to a document filing position in the basement of Jacobi.  Cruz worked

in the file room for about two weeks, but the assignment was difficult for her given her disabilities.  After she received a note from her doctor, she was transferred to a position as a telephone operator.

During Cruz's stint in the file room, the Colleague frequently visited that location as part of her duties at work and while there made comments to Cruz that made Cruz uncomfortable.  After Cruz was transferred to the telephone operator role, her duties continued to bring her into contact with the Colleague.  The Colleague continued to behave in ways that made Cruz uncomfortable.  Cruz reported the behavior to her supervisor, Edgar Cruz, and requested certain accommodations that would keep her away from the Colleague.  Edgar Cruz refused this request.  Ultimately, Cruz developed a post-traumatic stress disorder as a result of the Colleague's actions.

The telephone operator assignment also aggravated Cruz's disability.  Because of the nature of her duties, she was unable to take the frequent breaks she had taken in her previous role as a systems analyst, and during early 2016 she began to experience swelling and stiffness in her hands.  Cruz raised this issue with her doctor, who advised her that she should seek to revise her work schedule.  Although Cruz reached out to several managers and supervisors at Jacobi to request this

4

accommodation, it was never granted.  Instead, Edgar Cruz
suggested that she seek medical leave.  Cruz went on medical
leave beginning March 16, 2016.  To this day, Cruz remains on
medical leave from HHC.

III. Medical Leave:  2016 to 2018

During her medical leave, Cruz underwent treatment for her
hand disability with a physician specializing in hand surgery
and for post-traumatic stress disorder with a psychologist.  In
November 2018, her hand surgeon and psychologist authorized her
return to work in December 2018.  The hand surgeon conditioned
her return to work on her assignment to duties that did not
require her to work more than eight hours in a twenty-four-hour
period and did not require her to lift heavy items or to lift
items above her head.  The surgeon who performed Cruz's 2001
spinal surgery also certified that Cruz continued to need an
ergonomic chair.

Beginning in April 2018, Cruz discussed her potential
return to work with HHC staff.  Cruz expressed interest to Luz
Nazario, an equal employment officer at Jacobi, in working at a
different HHC facility upon returning to work.  Nazario told
Cruz that she was qualified for and could apply for any
available clerical position in HHC, and that after submitting

her application, she should inform Nazario, who would help her arrange an interview.

But before Cruz was ready to return to work, Nazario resigned. Cruz's case was reassigned to defendant Nicole Phillips, and then in November 2018 to defendant Dana Stein.[1] Stein, who Cruz describes as "overwhelmed and frustrated with her workload," rarely returned Cruz's telephone calls. Cruz applied to fifty jobs within the HHC system on her own and, pursuant to Nazario's instructions, informed Stein of the jobs for which she had applied.

IV.  Cruz's Efforts to Return to HHC:  2018 to 2020

Between her clearance to return to work in 2018 and the commencement of this lawsuit, Cruz was interviewed for five jobs in the HHC system but was not hired for any of them. Cruz arranged for three of these interviews -- occurring in November 2018, July 2019, and November 2019 -- without the assistance of Stein. Cruz cited Stein as a reference during her interviews for these positions, but she claims that Stein did not otherwise

_____

[1] While Cruz subsequently had contact with Phillips in 2020, Phillips was only assigned to serve as Cruz's equal employment officer for a period between September 2018 and November 2018. The complaint's sole allegation regarding Phillips during the brief period in 2018 when Phillips served as Cruz's equal employment officer is that Phillips "could not access" Cruz's previously filed paperwork regarding her request for an accommodation.

assist her in securing these positions.  Stein arranged two of
the five interviews that Cruz attended.[2]  They occurred in August
2019 and January 2020 at Queens Hospital and Elmhurst Hospital,
respectively.  During the August 2019 interview, Cruz learned
that the position would be unsuitable for her because it
involved heavy lifting.  Cruz concluded that the January 2020
interview was for a suitable position but was never called back
for a second interview despite being told by Elmhurst Hospital
staff that a second interview would be forthcoming.

V.   Cruz's EEOC Charge and Subsequent Events

On August 17, 2020, Cruz filed a charge of employment
discrimination with the Equal Employment Opportunity Commission
("EEOC").[3]  Also on that date, Cruz emailed Stein to inform her
that she was still waiting for additional job interview
opportunities.  Defendant Phillips responded to Cruz's August 17
email to request additional medical information.[4]  After a series

---

[2] Stein also arranged a third interview, to occur in May 2019,
but Cruz declined it because the position would have required
her to work a double shift and her disability did not allow her
to work more than eight hours in a twenty-four-hour period.

[3] Cruz did not annex her EEOC charge or the EEOC's decision to
her complaint, and her complaint does not make clear whether the
EEOC filing addressed the sexual harassment by the Colleague,
her difficulties securing a position at HHC that could
accommodate her disability, or both.

[4] The complaint does not explain why Phillips, rather than Cruz's
assigned equal employment officer Stein, responded to the August

of emails between Cruz and Phillips in the first weeks of
September 2020, Cruz concluded that Phillips was unaware of her
needs and explained that she needed the following reasonable
accommodations to return to work: an ergonomic chair, an
assignment that would not require her to lift more than five
pounds or work more than eight hours in a twenty-four-hour
period, and placement at a facility other than the facilities
where the Colleague worked.

On September 24, Phillips sent Cruz a letter extending her
reasonable accommodation authorization.  On October 6, Cruz
requested an extension of her leave beyond October 31, 2020
because she had not found a job, but did not receive a response.
Cruz repeatedly emailed and called Phillips and defendant
Blanche Greenfield, the supervisor of HHC's equal employment
officers, between October 2020 and January 2021 to request an
extension but did not receive a response.  On February 12, 2021,
an HHC attorney informed Cruz that her leave had been
retroactively extended and that the HHC Office of Equal
Employment Opportunity would assist her in searching for a
position.

---

17 email, nor does it explain why Cruz, after receiving
Phillips' response to her August 17 email, ceased her efforts to
communicate with Stein and began corresponding with Phillips.

VI.  Procedural History

The EEOC issued Cruz a right-to-sue letter on December 14, 2020.  Cruz filed this action on March 8, 2021.  The defendants moved to dismiss on July 1.  Cruz was ordered to amend her complaint or oppose the motion to dismiss by July 22, and Cruz chose not to amend and instead opposed the motion to dismiss on July 21.  The motion to dismiss became fully submitted on September 8, and on September 9, the case was transferred to this Court.

## Discussion

Cruz alleges disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL"); age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the NYSHRL, and the NYCHRL; and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), the ADA, the NYSHRL, and the NYCHRL.  The defendants have moved to dismiss the complaint in its entirety.

A court deciding a motion to dismiss pursuant to Rule 12(b)(6) "ask[s] whether the complaint's allegations, taken as

true and afforded all reasonable inferences, state a plausible claim for relief." Henry v. Cty. of Nassau, 6 F.4th 324, 331 (2d Cir. 2021). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Honickman v. BLOM Bank SAL, 6 F.4th 487, 495 (2d Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (citation omitted).

I.   Statute of Limitations

Cruz alleges that the defendants violated her rights through actions that occurred before she took medical leave in March 2016 and, more recently, in connection with her attempts to return to work in late 2018 and thereafter. The defendants have moved to dismiss certain of Cruz's claims as barred by the statute of limitations, reasoning that, because Cruz did not file a complaint with the EEOC until August 17, 2020, her

federal claims related to alleged discriminatory or retaliatory acts occurring before October 22, 2019 are time barred.  They also contend that, based on the applicable statute of limitations for claims under the NYSHRL and NYCHRL, Cruz's state and city law claims for acts occurring before March 8, 2018 are time barred.  For the following reasons, the defendants' motion to dismiss these claims as time barred is granted.

A.   Legal Standard

A claim under Title VII, the ADA, or the ADEA must be dismissed as untimely if the plaintiff has not filed a complaint with the EEOC within 180 days of the alleged illegal discriminatory or retaliatory act or filed a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged illegal act.  42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA); 29 U.S.C. § 626(d) (ADEA).[5]  "Although the statute of limitations is

---

[5] The statute of limitations for ADEA claims functions differently from the statute of limitations for Title VII and ADA claims.  Under the ADEA, a prospective plaintiff has 300 days to bring suit under the ADEA if the allegedly unlawful conduct occurred in a state that maintains a statute prohibiting age discrimination in employment, regardless of whether the prospective plaintiff has presented her claim to an appropriate state agency.  See 29 U.S.C. §§ 626(d)(1)(B); 633(b).  But under Title VII and the ADA, a plaintiff may only benefit from the 300 day limitations period for such claims -- as opposed to the 180 day limitations period -- if she has first sought relief from an appropriate state or local administrative agency.  See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a).

ordinarily an affirmative defense that must be raised in the
answer, a statute of limitations defense may be decided on" a
Rule 12(b)(6) motion to dismiss "if the defense appears on the
face of the complaint."  Connecticut Gen. Life Ins. Co. v.
BioHealth Lab'ys, Inc., 988 F.3d 127, 131-32 (2d Cir. 2021)
(citation omitted).

Generally, each discrete discriminatory or retaliatory act
that allegedly violates federal law "gives rise to a
freestanding [federal] claim with its own filing deadline."
Chin v. Port Authority of New York & New Jersey, 685 F.3d 135,
157 (2d Cir. 2012).  Therefore, where a plaintiff's claims are
premised on "discrete discriminatory or retaliatory acts such as
termination, failure to promote, denial of transfer, or refusal
to hire," those claims may be barred by the statute of
limitations "if they occurred prior to the 300-day period even

---

Here, Cruz filed a charge with the EEOC but did not file a
discrimination charge with an appropriate state or local agency
in New York.  Thus, the plain text of the statutes suggests that
her ADA and Title VII claims are subject to a 180 day
limitations period, while her ADEA claims are subject to a 300
day limitations period.  The Second Circuit, however, has held
that Title VII and ADA charges filed with the EEOC from New York
are deemed to be simultaneously filed with the appropriate New
York state agency pursuant to the EEOC's regulations and are
therefore entitled to the 300 day limitations period.  Tewksbury
v. Ottaway Newspapers, 192 F.3d 322, 327-28 (2d Cir. 1999).  The
Court therefore analyzes all of Cruz's federal claims as subject
to the 300 day limitations period.

though they may be related to acts that occurred within the permissible 300-day period." Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 42 (2d Cir. 2019) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002)).  The so-called "continuing violation doctrine," however, provides a limited exception to that general rule.  Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015).  That doctrine applies only to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment," such as hostile work environment claims, as well as claims based on "incident[s] of discrimination in furtherance of an ongoing policy of discrimination."  Id. (citation omitted).

"[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007).  A continuing violation doctrine applies to NYSHRL claims and is coterminous with the scope of the continuing violation doctrine that applies to federal civil rights claims.  Mira v. Harder (Evans), 113 N.Y.S.3d 44, 45 (1st Dep't. 2019).  The "reach of the continuous violation doctrine under [the] NYCHRL," however, "is broader than under either federal or state law."  Ctr. for Indep. of Disabled v. Metro. Transportation Auth., 125 N.Y.S.3d 697, 703 (1st Dep't. 2020).

A continuing violation may exist under the NYCHRL when there is a "consistent pattern" or a "continuing policy" of discriminatory or retaliatory acts.  Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 35 (1st Dep't. 2009).

B.   Application

Cruz filed her EEOC complaint on August 17, 2020. Therefore, all of her federal claims arising from alleged discriminatory or retaliatory acts occurring before October 22, 2019 -- 300 days before she filed her complaint with the EEOC -- are time barred.  Similarly, because she filed this action on March 8, 2021, her NYSHRL claims based on discriminatory or retaliatory acts occurring before March 8, 2018 are time barred.

Cruz relies on the continuing violation doctrine to pursue claims based on any alleged violations of her rights that occurred before she went on medical leave in 2016.  Cruz does not bring a hostile work environment claim; instead, her federal and NYSHRL claims for conduct in this earlier period are premised on alleged discrete discriminatory and retaliatory acts, such as a failure to grant an accommodation or a failure to grant a transfer.  Because her claims are based on discrete unlawful acts, the continuing violation doctrine may not be invoked to salvage her untimely claims unless those acts were committed in furtherance of an ongoing policy of discrimination.

Cruz does not suggest that the defendants maintained such a policy.  While she argues that the continuing violation doctrine salvages her time-barred claims because the defendants repeatedly took adverse actions against her over time for the same discriminatory and retaliatory reasons, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."  Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993), overruled in part on other grounds by Greathouse v. JHS Sec. Inc., 784 F.3d 105, 117 (2d Cir. 2015).  Thus, her federal claims must be dismissed to the extent that they are based on acts occurring before October 22, 2019 and her NYSHRL claims must be dismissed to the extent they are based on acts occurring before March 8, 2018.

Similarly, although the continuing violation doctrine under the NYCHRL is broader than the continuing violation doctrine under federal law under federal law or the NYSHRL, it does not salvage Cruz's NYCHRL claims that accrued before March 8, 2018. The various discriminatory and retaliatory acts alleged in Cruz's complaint that occurred before that date were committed by different and unrelated actors.  These disconnected acts do not amount to the consistent pattern or continuing policy required to allege a continuing violation under the NYCHRL.

Accordingly, Cruz's NYCHRL claims are time barred to the extent that they are based on events occurring before March 8, 2018.

Again, between March 2016 and December 2018, Cruz was on medical leave and pursuant to her doctors' orders, not permitted to return to work at HHC.  Between March 2016 and April 2018, Cruz had almost no contact with HHC or HHC staff.  This substantial break in her active employment at HHC broke any connection between Cruz's prior experiences at HHC and her recent efforts to find employment at an HHC facility.  Cruz's complaint asserts two discrete sets of unlawful acts: one from the period before March 2016, and another from the period after April 2018.  It does not contain any allegations that would bridge this lengthy gap and permit her to pursue a theory of liability based on the continuing violation doctrine.

II.  Disability Discrimination

The defendants have moved to dismiss Cruz's disability discrimination claims under the ADA, the NYSHRL, and the NYCHRL for failure to state a claim.  Because Cruz's federal claims stemming from events occurring before October 22, 2019 and her state and city claims stemming from events occurring before March 8, 2018 are barred by the statute of limitations, this Opinion considers only whether Cruz states a claim as to events within the applicable limitations period.

A.   Legal Standard

The ADA prohibits "discriminat[ion] against a qualified individual" in the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  This provision "requires employers to take certain affirmative steps to assist employees with disabilities," which include "reasonabl[y] accommodat[ing] . . .the known physical or mental limitations of an otherwise qualified individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business."  Bey v. City of New York, 999 F.3d 157, 165 (2d Cir. 2021) (quoting 42 U.S.C. § 12112(b)(5)(A)).

To state a claim that her employer has failed to accommodate her disability in violation of the ADA, Cruz must allege facts tending to show that "(1) [she] is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Kalarickal v. McDonough, No. 20cv10249 (DLC), 2021 WL 5112907, at *5 (S.D.N.Y. Nov. 3, 2021) (quoting Costabile v. New York Health & Hosps. Corp., 951 F.3d 77, 81 (2d Cir. 2020)).  NYSHRL failure to accommodate claims "are governed by the same legal standards as

federal ADA claims." <u>Camarillo v. Carrols Corp.</u>, 518 F.3d 153, 159 (2d Cir. 2008) (citation omitted).  That standard also applies to NYCHRL failure to accommodate claims.  <u>Gaughan v. Rubenstein</u>, 261 F.Supp.3d 390, 405-06 (S.D.N.Y. 2017).

"Where the employee's disability is known to the employer, the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  <u>Stevens v. Rite Aid Corp.</u>, 851 F.3d 224, 231 (2d Cir. 2017) (citation omitted).  There is no freestanding right of action under the ADA or NYSHRL for failure to engage in an interactive process.  <u>Greenbaum v. New York City Transit Authority</u>, No. 20cv771 (DLC), 2021 WL 2650509, at *9 (S.D.N.Y. June 25, 2021).  Rather, "an employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination."  <u>Sheng v. M&TBank Corp.</u>, 848 F.3d 78, 87 (2d Cir. 2017).  Under the NYCHRL, however, an employer's failure to engage in an interactive process is independently actionable.  <u>Greenbaum</u>, 2021 WL 2650509, at *9.

B.  Application

Cruz went on medical leave in March of 2016.  Her doctors cleared her to return to work as of December 2018, but she was never offered another position at HHC and to this day has not

returned to work.  The complaint adequately pleads that Cruz is disabled for purposes of each of the statutes under which she brings suit.  It also adequately pleads that the defendants with whom she interacted in 2018 and thereafter had notice of her disability.  Cruz identifies four accommodations that she needed upon re-entering the HHC workforce.  Cruz alleges that beginning in 2018 the defendants discriminated against her by failing to reinstate her in any clerical position that would accommodate her disabilities.[6]

The defendants argue that they have engaged in a good faith interactive process with Cruz and that the complaint does not suggest otherwise.  This motion to dismiss is not the occasion to explore the extent to which an employer must accommodate an employee's disability by assisting the employee to locate a job within its organization.  See Noll v. International Business Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an employer's accommodation is a fact-specific question that often must be resolved by a factfinder." (citation omitted)).  The defendants do not contend that there is no suitable job for Cruz within HHC.  Whether Cruz or HHC or both

---

[6] While Cruz complains as well that the defendants did not adequately engage with her in the interactive process, at its heart her complaint asserts that the defendants did not offer her a position at HHC in December 2018 or thereafter.

failed to exert sufficient efforts to find a clerical position

for Cruz that accommodates her disabilities must await

discovery.[7]

III. Retaliation

Cruz also brings claims of retaliation.  These claims are

dismissed.

To state a retaliation claim under federal law or the

NYSHRL,[8] Cruz must "plausibly allege that: (1) defendants

discriminated -- or took an adverse employment action -- against

[her], (2) 'because' [she] has opposed any unlawful employment

---

[7] The defendants' motion to dismiss Cruz's disability
discrimination claims seeks to dismiss these claims in their
entirety as to all defendants and does not address their
viability as to specific parties.  For instance, the motion to
dismiss does not address whether the City of New York is a
proper party to this action given that HHC "is a public benefit
corporation, independent of the City of New York," Brennan v.
City of New York, 59 N.Y.2d 791, 792 (1983), that has "complete
autonomy respecting its personnel." New York City Health and
Hospitals Corp. v. Council of City of New York, 752 N.Y.S.2d
665, 675 (1st Dep't. 2003).  Nor does it address whether Cruz's
ADA claims against the individual defendants must be dismissed
because the ADA does not provide for individual liability.  See
Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010).
Because the parties have not presented these issues, the Court
will not address them in ruling on the defendants' motion to
dismiss, and this Opinion should not be construed as a ruling on
their merits.

[8] Although Cruz alleges retaliation under a variety of provisions
of federal law, the pleading standards for all of these claims
overlap.  Brightman, 2021 WL 1999466, at *8.  The standard for
her NYSHRL retaliation claim overlaps with the federal standard.
Id.

practice." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d

72, 90 (2d Cir. 2015).  Causation may be pleaded either

> (1) indirectly, by [alleging] that the protected
> activity was followed closely by discriminatory
> treatment, or through other circumstantial evidence
> such as disparate treatment of fellow employees who
> engaged in similar conduct; or (2) directly, through
> [allegations] of retaliatory animus directed against
> the plaintiff by the defendant.

<u>Littlejohn v. City of New York</u>, 795 F.3d 297, 319 (2d Cir. 2015)

(citation omitted).  Retaliation claims under the NYCHRL are

analyzed similarly, and to survive a motion to dismiss, "a

plaintiff must plead facts giving rise to an inference of a

causal connection between the plaintiff's protected activity and

an adverse employment action."  <u>Brightman v. Physician Affiliate</u>

<u>Group of New York, P.C.</u>, No. 20cv4290 (DLC), 2021 WL 1999466, at

*10 (S.D.N.Y. May 19, 2021).

For the reasons described above, any acts of retaliation

occurring before March 8, 2018 are time-barred.[9]  The only

protected activity in which Cruz alleges she engaged in this

earlier time period were her complaints about her Colleague's

sexual harassment.  Thus, to the extent that Cruz has alleged

that the defendants retaliated against her between 2015 and 2016

---

[9] Any federal retaliation claims based on retaliatory acts
occurring before October 22, 2019, and any state and city claims
based on retaliatory acts occurring before March 8, 2018, are
time-barred.

due to her complaints regarding her Colleague's sexual
harassment, those claims are time-barred.[10]

The only protected activity alleged by Cruz that could give
rise to a timely disability retaliation claim was the filing of
her EEOC complaint in August of 2020.  The only retaliatory
conduct that she alleges occurred after March 8, 2018 was the
failure to offer her a clerical position within HHC.  She has,
however, failed to plead facts suggesting that this retaliatory
conduct was caused by the filing of the August 2020 EEOC
complaint.  She describes the defendants' failure to support her
job search and to find her a suitable position within HHC as a
consistent failure from December 2018 up until the filing of
this action in 2021.  She describes no change in the defendants'
behavior after August 2020 that can be linked to the filing of
the EEOC complaint.

Cruz also contends that she was subject to retaliation in
violation of Title VII when she requested on two occasions that,
upon her return to employment at HHC in December 2018, she not

---

[10] Cruz alleges, <u>inter alia</u>, that in 2015 she was transferred
from her position as a systems analyst to inferior positions as
a file clerk and a telephone operator as retaliation for her
complaints regarding sexual harassment.  Because any retaliation
claim stemming from these 2015 transfers is time barred, this
Opinion does not address whether the transfers qualify as
adverse employment actions or whether Cruz has alleged a causal
relationship between protected activity and the transfers.

work in an HHC facility at which the Colleague who had harassed
her in 2015 worked.  These requests do not constitute protected
activity.  "An employee engages in a protected activity when he
protests or opposes an employment practice that he reasonably
believes, in good faith, violates the law[,]" and a complaint to
an employer "that does not identify an employment practice
believed to be unlawful is not a protected activity."  Joseph v.
Marco Polo Network, Inc., No. 09cv1597 (DLC), 2010 WL 4513298,
at *17 (S.D.N.Y. Nov. 10, 2010).  While Cruz alleges that she
requested that she not be assigned to a facility where she could
encounter the Colleague, she does not allege that HHC ever
actually sought in 2018 to assign her to a facility where the
Colleague worked, nor does she allege that she was complaining
about an employment practice by making these requests.
Consequently, these requests do not qualify as protected
activity under Title VII.

IV.  Age Discrimination

The defendants have moved to dismiss Cruz's age
discrimination claims under federal, state, and city law, which
stem from her allegation that she was not hired for clerical
positions because of her age.  The motion to dismiss is granted.

"[T]o defeat a motion to dismiss . . . an ADEA plaintiff
must plausibly allege that" she would not have been subject to

an adverse employment action "but for [her] age." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 303 (2d Cir. 2021). The standards for age discrimination claims under the NYSHRL overlap with those of the ADEA, Abrahamson v. Board of Educ. of Wappingers Falls Cent. School Dist., 374 F.3d 66, 70 n.2 (2d Cir. 2004), and while age discrimination claims under the NYCHRL are construed more liberally than those under federal and state law, Cruz still must allege facts suggesting that she was treated "less well" because of age to state a NYCHRL claim. Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 110 (2d Cir. 2013).

Cruz has failed to allege any facts suggesting that HHC's failure to hire her for four separate positions was due to her age. She conclusorily claims that she was subject to discrimination based on age; she does not allege any facts suggesting that the relevant actors at HHC acted with that discriminatory animus. Nor does she allege any facts from which an inference of discrimination can be drawn, such as an allegation that HHC hired younger but less-qualified candidates for any one of the four positions. Indeed, she does not plead any facts regarding the candidates who were hired. She merely assumes that the persons selected for the positions were younger and were hired because they would not receive the higher salary

that she, an employee with more seniority, would have received
under her union's contract with HHC.  These omissions are fatal
to her age discrimination claims.

### Conclusion

The defendants' motion to dismiss is granted in part.
Cruz's claims of disability discrimination for the period
following December 2018 survive.  All other claims are
dismissed.

Dated:      New York, New York
            November 30, 2021

                                    _____
                                              DENISE COTE
                                    United States District Judge